IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA : Case No. 2:06 cr 272

VS. : JUDGE **JUDGE FROST**

CENTRAL ALLIED ENTERPRISES, INC.

## PLEA AGREEMENT

The United States Attorney for the Southern District of Ohio and defendant, CENTRAL ALLIED ENTERPRISES, INC. (hereinafter CENTRAL), hereby enter into the following plea agreement pursuant to Rule 11(c) of the Federal Rules of Criminal Procedure:

1. Defendant, CENTRAL, will enter a plea of guilty to Count 1 of the Information filed herein which charges CENTRAL with violating 18 U.S.C. section 1020, that is, knowingly making, or aiding and abetting in the making of, a false statement, representation, report, or false claim, regarding a highway project approved by the Secretary of Transportation.

2. Defendant, CENTRAL, understands the maximum penalty that may be imposed pursuant to the defendant's plea of guilty to Count 1, is a fine of not more than five hundred thousand dollars ($500,000.00) pursuant to 18 U.S.C. section 3571(c), probation up to five years and a special assessment of four hundred dollars ($400.00).

3. After defendant, CENTRAL, enters a plea of guilty to Count 1, the defendant will pay a special assessment of four hundred dollars ($400.00) as required in 18 U.S.C. Section 3013. This assessment shall be paid by the defendant before sentence is imposed and defendant will furnish a receipt at sentencing. The payment shall be made to the United States District Court, at the Clerk's office, 85 Marconi Boulevard, Columbus, Ohio 43215.

4. If such plea of guilty is entered, and not withdrawn, and defendant, CENTRAL, acts in accordance with all other terms of this agreement, the United States Attorney for the Southern District of Ohio agrees not to file additional criminal charges against the defendant, CENTRAL, or its owners, officers, or employees based on the conduct giving rise to the violation(s) of 18 U.S.C. 1020 as charged in the Information, or related to the U.S. Department of Transportation and Ohio Department of Transportation Disadvantaged Business Enterprise (DBE) program, and occurring prior to November 15, 2006. Further, the United States Attorney for the Southern District of Ohio agrees not to refer any such potential criminal charges to any other law enforcement official, whether federal or state or local, for prosecution.

5. The parties state, pursuant to Sentencing Guideline section 6B1.2(a), that the charge to which the defendant is pleading guilty adequately reflects the seriousness of the readily provable actual offense behavior and that the acceptance of the agreement by the Court will not undermine the statutory purposes of sentencing.

6. The parties recommend that CENTRAL receive a fine of $25,000, in addition to a term of up to two years probation for the purpose of completing payments of the fine and restitution. This fine is adequate in light of the following:

(a) CENTRAL has accepted responsibility for this offense and cooperated in the investigation once it was aware that such was underway.

(b) CENTRAL has entered into an agreement with Federal Highway Administration (FHWA) and with Ohio Department of Transportation (ODOT), to pay ODOT as restitution the sum of $275,410, which sum represents the DBE portion of the relevant project, ODOT project 1999-209, notwithstanding that CENTRAL fully performed the project and the work on the project was accepted by ODOT. CENTRAL has acknowledged by agreement that the $275,410 was wrongly paid by CENTRAL to a DBE subcontractor that had not performed, on said project, all of the functions, including commercially useful functions, that a DBE subcontractor is required to perform under applicable law.

(c) As part of the restitution agreement, CENTRAL has agreed that it will implement and pay for a corporate compliance and oversight program pertaining to its responsibility for compliance with the DBE program, said program to be approved and monitored by FHWA. This program may result in significant costs to CENTRAL.

(d) The United States is aware of a six-month suspension and voluntary exclusion period imposed upon CENTRAL by FHWA because of the conduct that is the subject of this plea agreement. In addition to its losses

        arising from the suspension and voluntary exclusion, CENTRAL has suffered an additional loss of substantial ODOT highway construction business; it was the low bidder on ODOT project 2006-120 but was denied award of the contract by ODOT as a result of this pending charge. CENTRAL has represented that it can establish a lost profit in excess of $600,000 from loss of this project.

(e)    The parties further understand that this agreement is not binding on the Court and the final determination concerning defendant CENTRAL's acceptance of responsibility for purposes of sentencing rests with the Court. The Court's determination with respect to acceptance of responsibility will not serve as a basis for defendant CENTRAL to withdraw from this agreement.

7.    The defendant CENTRAL understands and acknowledges that the defendant is entering into this plea agreement and is pleading guilty freely and voluntarily. The parties have jointly submitted a statement of facts, and CENTRAL acknowledges the accuracy of said statement of facts and that its conduct violated 49 CFR Sec. 26.55 and should have been disclosed to ODOT. Defendant CENTRAL agrees that this agreement is not the product of threat, coercion, or intimidation.

8.    The defendant CENTRAL acknowledges complete satisfaction with the representation of counsel and the advice received in connection with this Plea Agreement.

15595.022 - 307688v1

9.     Defendant CENTRAL is aware that its sentence may be imposed in accordance with the advisory Sentencing Guidelines and Policy Statements. The Defendant is aware that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set forth for the offense to which CENTRAL pleads guilty. The Defendant CENTRAL is aware that the Court has not yet determined a sentence. Defendant CENTRAL is also aware that any estimate of the probable sentencing range under the advisory sentencing guidelines that CENTRAL may have received from the Defendant's counsel, the United States, or the probation office, is a prediction, not a promise, and is not binding on the Court. The United States makes no promise or representation concerning what sentence the Defendant will receive and defendant CENTRAL cannot withdraw a guilty plea upon the actual sentence.

10.     With the exception of paragraph 6, it is agreed if the Court refuses to accept any provision of this Plea Agreement, neither party is bound by any of its provisions, defendant, CENTRAL, may withdraw the guilty plea, and the United States Attorney for the Southern District of Ohio may seek leave to dismiss the Information without prejudice and may seek identical and additional charges. Defendant, CENTRAL, will not object to such dismissal or filing of further charges, though it will reserve the right to assert all appropriate defenses to such further charges, with the exception of any claims under the statute of limitations that had not expired on or before April 28, 2005.

11.     By virtue of the defendant's guilty plea to Count 1 of the Information, the defendant CENTRAL understands that the defendant is not a prevailing party as defined by 18 U.S.C. 3006(A) and hereby expressly waives defendant's right to sue the United States with respect to application or enforcement of the Disadvantaged

Business Enterprise (DBE) program or with respect to this prosecution.

12. No other promises, agreements, or conditions have been made relative to this matter other than those expressly set forth herein, and none will be made unless in writing and signed by all parties hereto. This written agreement embodies all of the agreements and understandings between the United States Attorney for the Southern District of Ohio and the defendant, CENTRAL.

13. The persons signing this agreement represent that they have authority to bind the defendant, CENTRAL, and the United States Attorney for the Southern District of Ohio.

_11/22/06_
Date

Gerald S. Orn, Chief Executive Officer
Central-Allied Enterprises, Inc.

_11-29-06_
Date

Terrence L. Seeberger (0010262)
Stark & Knoll Co., L.P.A.
Attorney for Central-Allied Enterprises, Inc.

_12-5-06_
Date

J. Michael Marous (0015322)
Assistant United States Attorney

15595.022 - 307688v1

Statement of Facts

On or about April 14, 1999, Ohio Department of Transportation ("ODOT") let ODOT Project 209 (99), and awarded it to Central Allied Enterprises Inc. ("CAE") on April 27, 1999. The overall contract amount was $2,759,106.24 with a 10% Disadvantaged Business Enterprise ("DBE") participation goal.

To meet a portion of this DBE goal, CAE filed with ODOT an ODOT Request To Sublet Form (C-92), requesting ODOT's permission for a certain party to perform bridge work and curb and gutter work, as a DBE subcontractor ("the DBE"). This C-92 was submitted May 10, 1999, and identified the proposed DBE and the scope of the work proposed to be done by the DBE. Attached to it was a sub-contract dated May 6, 1999, between CAE and the DBE identifying the same proposed work items, which included certain bridge work, under the subcontract scope of work. This DBE was an ODOT pre-qualified DBE subcontractor.

On June 21, 1999, CAE officers attended a pre-construction briefing where guidance was provided associated with payment for work completed during the project. The CAE officer advised at this meeting that CAE intended to utilize the DBE to participate in curb and gutter work for Project 209-99.

In late March, 2000, a CAE employee met with owners of a Non-DBE, also a non-ODOT pre-qualified subcontractor, and visited the Project 209-99 job site. The CAE employee showed officers of the Non-DBE the scope of the project's curb and gutter work. ODOT was unaware of this meeting. On or about April 1, 2000, the Non-DBE provided a quotation to do the curb and gutter work on Project 209-99.

On or about April 17, 2000, employees of the Non-DBE started working on Project 209-99 on curb and gutter work, and continued to do so through May 3, 2000. The DBE placed these employees of the Non-DBE on the DBE payroll and paid them, with ODOT funds, for this work. Subsequently, the DBE submitted certified payrolls to ODOT.

Once work had started, CAE relayed personnel information of the Non-DBE workers already working on the job site (W-4 forms from the files at Non-DBE) by fax to the DBE without disclosing to ODOT the fact that Non-DBE employees were actually performing the scope of work on the payroll of DBE.

The DBE, after obtaining the related personnel information, prepared and submitted by mail certified payrolls to ODOT listing the employees performing the curb and gutter work as DBE employees. The DBE set up file folders listing these employees as their own. Review of these personnel files revealed that; (1) no original records were discovered inside the DBE files. (2) The records listed all showed fax identification marks and fax numbers of CAE and the non-DBE; (3) The date stamping clearly showed the Non DBE faxed W-4 documents to CAE which in turn faxed to the DBE. These records were placed inside personnel folders at the DBE, thus giving the appearance that the employees doing the curb and gutter work were the DBE's.

On April 25, 2000, CAE entered into a written agreement with the Non-DBE for work on Project 209-99. CAE provided language in the written agreement stating "CAE will backcharge 'Non-DBE' for all labor submitted to and paid by DBE," as well as for all concrete provided by CAE.

CAE also submitted by federal express on April 25, 2000 a corrected C-92 form, Request to Sublet, to the DBE, which delivered the same to ODOT, which received it on May 2, 2000. The new C-92 changed somewhat the scope of work for the DBE, and included curb and gutter work that was also referred to in

the written agreement between CAE and Non-DBE and was part of the work done by the former Non-DBE employees between April 17 and May 3, 2000. This C-92 did not mention that CAE had entered into a written agreement with Non-DBE that related to curb and gutter work; and ODOT was never advised by CAE of the existence of such agreement. The failure to report the existence of this written agreement to ODOT is the essence of Count 1 of the Information.